Council for the last case to be argued, which is Souza v. Exotic Island Enterprises, 21-2149. And then we have Mr. Goloshevsky. Goloshevsky, Your Honor, yes. Mr. Goloshevsky, I understand you would like to reserve three minutes for rebuttals. I would, Your Honor, thank you. Okay, why don't you proceed. Thank you very much, Your Honor. John Goloshevsky, on behalf of the appellants, this court undertakes de novo review of the balancing of the Polaroid factors. The district court found four of the seven factors, including the two factors that this court has deemed most important, that is similarity of the marks and proximity of the products. The district court allowed that the jury could find in plaintiff's favor. The court nevertheless found that under no set of circumstances could these advertisements cause consumer confusion. This is despite the fact that when these advertisements were put to the corporate representative of the defendant, one specific, it's on JA-41, statement says, are you naughty enough to party with our girls? And I said to him, do you think reference to our girls could convince a reasonable consumer that these are women who are going to be at your club? And what he said was, well, if they choose to believe what they see, if they choose to believe what they see. Despite this, there can be no confusion. That is what the district court said. And we lay out in our papers how we got to this, what we believe to be a contradictory and inherently unsustainable position where unquestionably false advertisements containing images of individuals who nobody disputes have trademark rights in their image and likeness are nevertheless effectively protected under federal law. We've gotten there through a redrafting of the plain language of Section 1125A, a narrowing of the standing requirements, and a decision to veer from decades of authority, which tells us that in evaluating a likelihood of confusion, we look at the totality of the circumstances. I'm sorry. I'm trying to figure out where you're going. Are you basically challenging the decision in Electra? I am not, Your Honor. I am challenging the district court's… But you understand Electra is out there now. Absolutely. And we're bound by it. I agree with that. Are you basically arguing right now the false advertising issue, which was not in Electra? No, I am arguing the false association and the way the district court interpreted Electra, which the district court interpreted Electra to say that recognizability, and we can call it fame or celebrity or whatever we want to call it, public prominence they used in Electra, is the bottom line in a case brought by an individual. It seems to me you're taking on the hardest thing you've got to take on here. Didn't the court in Electra specifically say that based on essentially exactly these facts, there was no false endorsement claim? I see what the court said in Electra. It says we look at recognizability. There's no evidence of that. Once the expert report is excluded, I realize you have a different issue about that ruling, and that's good enough. What is it that is distinguishing this case from Electra other than the expert report, which is a separate question we can talk about, but you haven't raised that yet? Sure. What is it that distinguishes this case from Electra on the false association claim? These people have better evidence of recognizability than the same people when they've sued in Electra? Well, they do, but as you say, the survey was kicked, and we can get to that in a minute. But Electra absolutely held that recognizability is one of the factors, no question. And it considered certain specific factors and said based on those factors, the plaintiffs lose. And the district court here now didn't do what the district court did in Electra, which is go through all eight factors, but it said the three factors that were found to be controlling in Electra are also present here. Well, I agree, but I think there's a problem with all of a sudden now we're saying that three of seven factors are the controlling factors. Moreover, that's what the court said in Electra. That's enough for us. Once we've gone through these three, we know the answer. The district court of appeals did not go through all the remaining factors. I agree with that, but that is contradicting decades of authority. It may contradict decades of authority, but now that's the authority, isn't it? To which then, if that's the case, then the only thing that matters when an individual brings a claim under 1125A are three factors. Oh, no, no, no, no, no, no, no. Excuse me. Not necessarily the only thing that matters in every trademark dispute. The only thing that matters in this particular contract dispute, which is essentially the exact same one that we had in Electra. The Electra court, however, Your Honor, never said that recognizability is the bottom line. That is what the district court said. The district court said effectively now it is only one factor. Electra leaves open the possibility that if all the other factors point in the opposite direction very strongly, that maybe a different case could be different. Yes. You take the point that this looks very similar to Electra. Absolutely. I agree that it does. But at the same time, what we're talking about is the district court elevating a single factor, recognition, putting aside the fact that the court did not believe that my clients have enough recognition. That's a finding of fact, by the way, which is 4 million, 5 million social media followers. This magazine, that magazine. The district court said that doesn't matter for recognition. They kicked my survey. That's fine. But at the same time, when we are talking about recognition, the reason recognition is important is because we have elevated the idea of endorsement. And we lay out in our papers. After we have the argument about this idea about endorsement and recognition, maybe you could say something about the false advertising claim. Sure. The district court dismissed the false advertising claim on the grounds that we were not within the zone of interest, where we had clearly alleged reputational injury. Each of my clients are professional models being affiliated with a gentleman's club. So the district court entertained that idea that there was some kind of reputational injury and said that there just isn't any evidence of that because nobody had lost any jobs. Nothing really happened to them. Well, it's accurate that we cannot provide specific evidence of specific lost jobs. But we are talking about when you're in the zone of interest in the first place. Well, what about general evidence of loss? I took the district court – it struck me as a little odd to call it not within the zone of interest because that sounds like then we don't make any further inquiry. But it sounds like what the district court was saying is if you are not a direct competitor or a consumer, your false advertising claim would have to show some actual injury. Isn't that what the district court actually said and then went on to say you haven't shown any evidence of actual injury? The actual injury in this case, and I believe the district court would disagree, but the actual injury is the loss of the fair market value. Well, that's – oh, only the fact that there was a monetary amount that they should have been paid. Absolutely. Which brings us back to the trademark issue really, isn't it? I'm not sure if I followed that last part. In other words, what they're claiming is we had a right to be paid for this because you are using our trademarks, namely our bodies and faces. Correct. So that's the trademark issue. That's not really the false advertising injury. The false advertising injury would be if there is, for example, some harm to reputation. So to get back to whether there is any evidence of harm, I would think that there is some possibility. It may even be likely that if someone who is known and recognized in a field is now thought to be working for, no offense to the defendants here, a third-rate strip club in Newburgh, that that would be bad for them. But is there any indication, for example, that here's somebody who's making money all along and then these ads appear and then they're making no money? Now, if you had that, I would say, well, gee, you don't have to show that they had – that it was this job that they were lined up for and someone told them we're not hiring you because we hear you're a stripper. If there was some inference that could be drawn that their income falls off a cliff. Or indeed, if there was a direct email of someone saying I was going to hire you. Sure, sure, but there's not. And we don't expect that to be. Exactly. But is there any inference that can be drawn that any of these people were actually still looking for modeling? Some of them are working in other fields. Is there anything that shows you're making $80,000 a year on modeling jobs and then this stuff comes out and then suddenly that drops? I think we would always have a proof problem with that, Your Honor. We can't prove that the reason – Well, I'm not asking you for that proof. I'm saying I'm ready to draw the inference. If you showed the drop, I'm ready to draw the inference of plausibility or at least say that's something a jury could find. Right. So why – but you're – are you telling me there is any actual evidence of a decline in income subsequent to – putting aside whether we could draw an inference of causation – I'll give you a post hoc. You just have to show me the post hoc. Is there any? I cannot point right now, Your Honor, to evidence that specific income of a specific plaintiff dropped the year after or the month after, however it was, that that image was published. I don't have that evidence. The modeling industry is an industry in which income goes up. Was the damage was from loss of income from modeling jobs or is there some other reputational injury that's separate from that? Well, there's – again, I always run into proof problems here, but the main – Proof problems is what we're considering in the summary judgment. Can you prove something? And the point is I cannot tie in an exact loss of a job to their advertisement. We're not saying exact. Well, again, I have income that – How do we step back from the evidentiary question? What is the injury that happened to your clients as a result of being featured in the advertisement? It's that they were denied the fair market value of the use of their image by a gentleman's club. They weren't paid for it. They weren't paid for the use of these particular pictures. That's correct. But doesn't the Lanham Act ask us to find somebody who's damaged by the false advertising, the false advertising itself? Well, it looks for the actual – it looks for – the term used is actual injury. Now, the definition of actual injury – The term used is damaged by such act. We would submit is the – they were damaged by the act. They were damaged by the act by not being paid by defendants' use of the image. That's the issue. In addition, if there was reputational injury, which we alleged, but again, we don't have – Well, why don't you explain the – what is the nature of the reputational injury? The nature of the reputational injury is if I'm a commercial model who works for clothing lines and lingerie lines and swimwear lines, and now all of a sudden I am associated with a strip club. Ms. Hinton, the image I referenced on page 21, had people coming up to her asking her, I didn't realize that you needed money, that you're stripping now. There's a serious – We're not asking generically what might be the injury. We're at summary judgment. So it comes back to what evidence do you have? And we're not saying do you have sworn affidavits from 17 people saying I turned her down for a job because what evidence do you have of any sort that would survive summary judgment to give some evidence of reputational injury? What is your evidence that survives summary judgment? The evidence that we have is an affidavit from each of the plaintiffs demonstrating that affiliation. These are all people who have been in the modeling industry for years, some decades, stating that them being affiliated with a strip club is potentially devastating to their careers. That's the best evidence that we have. Okay, I appreciate that. So we've heard your side. You've reserved three minutes. Just one additional question, just a very short one. Sure. You're not contending, at least I didn't see it in your brief, that it was error for the district court to dismiss the claims that survived for jurisdictional reasons. You're not challenging that ruling, are you? The right of publicity claims, I am not. Right, okay. Okay, very good. And we'll see you in a few minutes for your three minutes of rebuttal. Why don't we hear from Mr. Kolb for the appellee? Thank you, Your Honor. And, Mr. Kolb, if you could just adjust the microphones as well. They're in front of you. We just want to make sure we hear you. Thank you. Okay, should I move it down? No, I think just adjusting the microphones. Oh, I'm sorry. If you're comfortable. Okay. Yes, stand in the center of the podium. That way both microphones pick you up. Okay. Perfect. Thank you. Okay. My name is Michael Kolb, Your Honors. I'm with O'Connor and Partners. The primary issue raised in the appellant's brief was the statute of limitations issue, which was not discussed in the oral argument. But that issue, as well as all the other issues on this appeal, is not novel. All of the issues are controlled either by ELECTRA or by other Supreme Court or Second Circuit law. Could I ask a question about the statute of limitations in particular? Yes. In ELECTRA, the majority opinion does say that the district court correctly dismissed on statute of limitations. And then it says, as will be explained below. There is no explanation below. And when you do get below, you find out that no one challenged the statute of limitations issue in that case. Right. So that issue was not really before the court. I tend to agree with Your Honor on that point. The issue was before the court. But the Stefano case in the New York Court of Appeals, which we rely on in our brief, basically said that New York has neither a common law action for invasion of privacy nor for the lack of invasion of privacy. All New York has is Section 51. That's all New York has. There is no extra Section 51 issue in Section 51. I'm not saying you're wrong about the statute of limitations. My only question is, is this something that we have actually decided in a square holding that an issue was actually before the court? Or is that a sort of drive-by, that sounds right to us, on an issue that wasn't actually challenged? I think that's a valid point, Your Honor. Our position is, even if it wasn't directly passed upon in Electra under the New York Court of Appeals decision in Stefano, you have to look to Section 51 for a cause of action. And the legislature in 215 Subdivision 3 of the Civil Practice Law and Rules has said that for any Section 51 action, the statute of limitations is one year. Also on that point, Your Honor, there's no challenge on this appeal to the court's dismissal of the two surviving claims. Right. And it's interesting to me, in principle, because it's a little odd that the district court does assert supplemental jurisdiction for all the parts that you win, and then doesn't for at least one case where I think you conceded that there could be summary judgment on liability. So there's not really very much for the district court to do anymore. And instead, that's shuffled off to the state court. But we've just heard that's not questioned. There's no argument that that was error. Right. And the district court also found that there was no diversity jurisdiction. Right. Yes, of course. Can I ask about the false advertising claim? Yes. So the zone of interest is not a standing test. You don't have to really establish an injury. The inquiry is about whether you're the kind of person to whom Congress would have wanted to afford a cause of action, whether you're within the zone of interest that the statute is meant to protect. So if someone says, well, look, the false advertising injured me because it makes it appear as if I am affiliated with this business because they used my likeness in advertising the business, and that is false, why isn't that? Why doesn't that put the person within the zone of interest? Well, I think that type of claim falls under the rubric of a false endorsement claim. And one of the elements of a false endorsement claim – Well, I don't know. So A1B says if commercial advertising or promotion misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities. Well, Your Honor – So it's not necessarily if the person is endorsing it, but actually if the implication of the advertisement is that the woman in the picture is part of the crew at the club, it's misrepresenting the offerings of the club, and why isn't she somebody who's injured by that? Because the message is that she is part of their staff. I don't think implication is sufficient, Your Honor. I think there has to be proof of actual injury. There has to be proof? Yes. So you're saying that if she could prove that somebody did mistake her for an employee of the club, then that would be sufficient to overcome the zone of interest test. But because she doesn't have specific proof, she is not within the zone of interest. No, Your Honor. I think what Your Honor is saying is more germane to the false endorsement claim. I want to talk about zone of interest, and that's an inquiry that we do on false advertisement. Right. Tell me why this doesn't state a false advertisement claim. So what I'm saying is the commercial advertising or promotion does misrepresent the nature of the person's goods, services, or commercial activities because it implies that their commercial activities include somebody it does not include by putting her in the photo. And so my question is why isn't the person who's falsely implicated in the business, why isn't that person within the zone of interest? Because she's been misrepresented. Well, she's not a direct competitor of the defendant, Your Honor. And in the absence of competitive injury— But the direct competitor, that's just one way to show that you're within the zone of interest, right? Because we assume that you're going to be damaged if your direct competitor gets some kind of advantage or whatever. But if, in fact, the nature of misrepresentation is that you include somebody else— Well, I'm not aware of a case that so holds, Your Honor. So you think that false advertising is the only people who could sue are direct competitors? No. Other people can sue, but they have to show proof of actual injury. Right, so that's back to my other question, which is if she could prove that somebody mistook her for someone who works at the strip club and that affected something in her life, then she would have standing. Yes, Your Honor, but this was a motion— But this was a motion to dismiss, right? A motion for summary judgment, Your Honor. Okay, so we have some evidence. Yes, we have— So it might be enough that she could allege that she was mistook, but you're saying that actually she wasn't mistaken. Right. There's no proof in the record, Your Honor. Wasn't there some allegation or some testimony from at least one of these people that someone came up to her on the street and said, I didn't know you were hard up, and that's the way she was represented? No. No, I don't think so, Your Honor. I think she testified that she was recognized on the street by someone, not that she was hard up or that that person— Oh, no, this just goes to the question of recognizability. Yes, Your Honor. Somebody said, hey, aren't you the famous— Right. Whoever, right. Right, right, right. Because I think Mr. Goloszewski said, at least I misunderstood him, that there was reputational injury because someone said, I didn't know you needed money. But that's—you're saying that's not in the record? That's not in the record, Your Honor. Okay, thank you. I'd also like to add, in the reply brief, the plaintiffs cited two cases which they said stood for the proposition that courts have, quote, repeatedly, unquote, held, that plaintiffs, such as the plaintiffs in this case, in this type of case, have a valid claim for false advertising. In neither of those cases discussed the Lexmark case. One of the cases, the one from Pennsylvania, the defendant had not even responded on the motion for summary judgment. So the court relied exclusively on Third Circuit authority and essentially on default granted the plaintiff's motion for summary judgment. The other was a Florida case which, again, did not cite or address the Supreme Court's decision in Lexmark and, again, relied exclusively on Eleventh Circuit authority. We cited Second Circuit authority in our brief, which I think stands for the proposition that for false advertising, you either have to be a direct competitor or you have to show actual injury. So what could they have shown that would have allowed them to pursue the claim? Well, if someone said, our impression of you has changed now. We saw the social media ad of this company. What they would need would be an affidavit from somebody who had employed her in the past. Yes, something of that nature, indicating that we will no longer hire this person. Or even perhaps, couldn't it just be a pure reputational injury, sort of like in a libel case? If someone at her church said, I'm shocked that you're working in a strip club. I'm not going to associate with you anymore. That might be an injury, but there's nothing of that sort. Perhaps. There's nothing of that kind in the record, Your Honor. Nothing. All right. I think we understand the argument. Thank you very much. Mr. Goloszewski, you've reserved three minutes for rebuttal. And could you first start by asking whether I misunderstood your answer to the question? It was absolutely – were you talking to me, Your Honor? Yes. Which was Ms. Hinton had testified, not as concerned in this case. I wanted to be very clear about the reputational, that someone had in fact come up to her and said, I did not know you were hard up for money. It was not in connection of – I'm sorry. What? Not in this case? Not in this matter. We were talking about a reputational – a general reputation. Are you saying that it's possible that somebody would suffer a reputational injury? Correct. Because in relation to some other advertisement, somebody mistook her for – That's absolutely correct. I was never trying to – But nothing in the record here shows that. There is no evidence that anyone said because they saw this advertisement from this client that I think less of you anyway. That is correct, Your Honor. That is correct. And I apologize if there was misunderstanding on that. On the right of publicity claim, we talk about how in a lecture the court went to significant lengths to talk about the different class of plaintiffs that are protected, the different interests that are protected, the different type of damages that are protected when we're talking about a right of privacy on the one hand – Those are questions about what kinds of damages might be available so we can differently conceptualize different kinds of claims under Section 51 and we'd look at different kinds of damages depending on how we conceptualized it. Sure. But is there any indication that at the time that New York's legislature set a statute of limitation for claims of right to privacy under Section 51 that it had any thought of different types of claims that could be differentiated in different ways rather than just referring to what is called under Section 50 and 51 a right of privacy in New York law? Yeah, I don't know if there's any indication, but we're in an evolving area of law. We have a right of – it was last year, just last year, that the New York legislature for the first time set a right of publicity statute under Section 50 and specifically stated that a right of publicity is a property right under New York law. This was last year. Yeah, but that has nothing – what does that have to do with the statute of limitations that is specifically set for Section 51? No, it's not specifically set for Section 51. It is set for rights of privacy under Section 51. It was set for that, but it was set for that at a time when there was no other right created by Section 51. So I'm just not understanding why we should incorporate into that statute retrospectively some concept that the legislature that created it had no idea of. Well, if we agree that, as this Court said in the lecture, Section 51 protects a right of privacy and also protects a right of publicity, then the question is – But even today, the right of publicity that it protects is an aspect of the right of privacy, right? That's what the New York Court of Appeals said. Section 50 is still titled right of privacy, right? That's correct. So even if it protects a right of publicity, it protects it as part of an overall right of privacy. Well, I mean going back to the restatement, the right of publicity or misappropriation of likeness was encompassed or was an aspect of a right of privacy. That has not stopped – So when you say – so we have two statutes. One says the right of privacy, a claim for violation of the right of privacy under Section 51 has a certain limitation, and another one says property damage. Don't we have a specific statute that's referring to Section 51, and should we deal with that specific statute? Given that even if you're pursuing the right of publicity, you are still in some sense vindicating your right to privacy. There's a specific statute that says something about a right of privacy under Section 51 and is silent as to a right of publicity. I think I have this argument. Can I just ask you to address the argument about injury? So your adversary said, well, if they had any evidence that there was some kind of negative effect of the advertisement, then they would be able to sit a claim. But we're at summary judgment, and they didn't have any such evidence. So do you agree that the only evidence you have is they weren't paid a fee for use of the picture, but they can't show that there was any other kind of injury, reputational or professional? Well, I think – I'm not sure if it was counsel or one of the honors who said that we could get affidavits from somebody who said that we didn't hire them. But that's not how – no potential client is going to say to a model, well, I was going to hire you, but then I saw this. I mean, it's unrealistic to say that. But that doesn't mean that – that seems to be saying because one can't acquire evidence, I'm relieved of my burden to produce any evidence. No, absolutely. So you still have an evidentiary burden. So the question is how did you fulfill your evidentiary burden? Well, we go back to the fair market value and being denied the fair market value. That's it. That's what we have. Okay. I think we understand your argument. Thank you to both sides. We will take the case under advisement. There is one other case on submission on today's calendar. That's 20-1776, United States v. Fleming. We will also take that under advisement. And I would ask the clerk to adjourn court. Court is adjourned.